[Cite as *Papenfuse v. Toledo Area Regional Transit Auth.*, 2015-Ohio-3193.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Shelley Papenfuse                                    Court of Appeals No. L-14-1178

    Appellant                                    Trial Court No. CI0201204519

v.

Toledo Area Regional Transit Authority          **DECISION AND JUDGMENT**

    Appellee                                     Decided:  August 7, 2015

* * * * *

Kevin J. Boissoneault and Jonathan M. Ashton, for appellant.

Glenn E. Wasielewski, for appellee.

* * * * *

SINGER, J.

{¶ 1} This is an appeal from the Lucas County Court of Common Pleas awarding summary judgment to appellee, Toledo Area Regional Transit Authority ("TARTA"). We affirm.

{¶ 2} On May 21, 2009, appellant, Shelley Papenfuse, was injured while riding on a Toledo Area Regional Paratransit Service ("TARPS") vehicle. TARPS vehicles are owned and operated by TARTA. They are specialty vehicles used to transport passengers with disabilities. Appellant suffers from juvenile rheumatoid arthritis, and therefore must be accommodated accordingly. The vehicle appellant was in was operated by a TARTA employee. An abrupt halt caused appellant to fall from her wheelchair. Appellant suffered injuries as a result of her fall.

{¶ 3} Appellant filed a negligence action arguing that the vehicle was being driven in an unsafe and erratic manner. Appellant also contended that the TARTA operator in this instance failed to secure her with the lap belt and/or shoulder harness. This failure, appellant claimed, led to her not being secure within the vehicle before said incident. TARTA claimed that it was excused from liability by virtue of an exculpatory clause found on the back of appellant's bus pass which purportedly relieved TARTA of all liability in negligence. The trial court granted summary judgment to TARTA. Appellant now appeals setting forth the following assignment of error:

I. The trial court erred where [sic] granted summary judgment in favor of Appellee Toledo Area Regional Transit Authority.

{¶ 4} Appellate review of summary judgment is de novo. (Citations omitted.) *State Farm Mut. Auto. Ins. Co. v. City of Toledo,* 6th Dist. Lucas No. L-10-1026, 2010-Ohio-2795, ¶ 8. Further, summary judgment is only appropriate when examining the evidence as a whole: (1) there is no genuine issue of material fact; (2) reasonable minds

2.

can come to only one conclusion which is adverse to the party against whom the motion for summary judgment is made; and (3) the moving party is entitled to judgment as a matter of law. (Citations omitted.) *Id.* All the issues that are in doubt must be resolved in favor of the nonmoving party. (Citations omitted.) *Id.*

{¶ 5} Appellant testified that she felt the operator was responsible for her injuries because he was driving in an unsafe and erratic manner. Further, she testified he failed in securing her, contrary to federal administrative guidelines and mandates. Moreover, she testified that she had ridden the same or similar vehicle, under the same circumstances, for a significant amount of time. However, she confirmed to never have been injured in such a manner. This convinces the court that, in viewing this evidence most favorable to her, the operator likely acted with ordinary negligence. These facts are not in dispute for purposes of this review.

{¶ 6} Notwithstanding the operator's established negligence, however, this court holds that the exculpatory language of appellant's bus pass relieves TARTA of liability. Generally in Ohio, exculpatory clauses, which relieve a party from its own negligence, are not against public policy despite being disfavored in the law. *See Lamb v. Univ. Hosp. Health Care Ent., Inc.,* 8th Dist. Cuyahoga No. 73144, 1998 WL 474183 (Aug. 13, 1998). Valid exculpatory clauses or releases constitute express assumptions of risk. *See Anderson v. Ceccardi*, 6 Ohio St.3d 110, 114, 451 N.E. 2d 780 (1992). As with contracts in general, these clauses are to be strictly construed against the drafter unless the

3.

language is clear and unambiguous. *Lamb* at ¶ 8. When the terms of the contract are clear and unambiguous, the interpretation is a matter of law. (Citation omitted.) *Id.*

{¶ 7} A party waiving his right to recover for another's negligent acts must make a conscious choice to accept the consequences of the other party's negligence. *Id*. at ¶ 9. If the terms of the contract are ambiguous, the intention of the parties is a factual inquiry for the trier of fact. *Id*. Recovery for willful or wanton misconduct cannot be waived. *Id.*

{¶ 8} Moreover, as with all contracts, the party against whom the contract is being enforced may seek rescission of the contract if the terms are unconscionable. *Id*. at ¶ 10. Unconscionability is generally recognized as the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. (Internal citations and quotations omitted.) *Id*. Whether a clause is unconscionable is a question of law. *Id.* The party challenging the enforceability of the contract has the burden to establish both substantive and procedural unconscionability. *Id*. at ¶ 22.

{¶ 9} In that regard, substantive unconscionability involves those factors which relate to the contract terms themselves, and whether they are commercially reasonable. (Citations omitted.) *Id*. Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties. These factors may include age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, and whether the terms were explained to the weaker party.

4.

{¶ 10} In her capacity as a TARTA board member, appellant was issued a free bus pass with her photo, identifying her as a board member. She used the pass the day of the incident. The back of the card reads as follows:

*In consideration of receiving this free pass, the person named thereon using the same, voluntarily assumes all risk of accidents and expressly agrees that the Authority, its agents and employees, shall not be liable under any circumstances, whether of negligence of itself, its agents, or employees for any injury to his or her person*, or for any loss or injury to his or her property; and that as for him or her, in the use of this pass he or she will not consider the Authority as a common carrier, or liable to him or her as such. *This pass shall be a gratuity and not as part of and compensation for employment or service rendered to the Authority*. And as a condition precedent to the issuing and use thereof, the person named on the face of this pass states that he or she is not prohibited by law from receiving free transportation, and that pass will be lawfully used. This pass may be used only by the person to whom issued. If presented by any other than the person named on the reverse, the driver will take up this pass and collect fare. The employee to whom this pass is issued will be subject to disciplinary action up to and including termination for any unauthorized use of this pass. By using this pass, the employee agrees to all of the above conditions. (Emphasis added.)

**{¶ 11}** Appellant contends that the above language only applies to employees and that because she is a board member, appointed by the city, and not an employee of TARTA, the above language does not apply to her. We disagree. The clause specifically states that it applies to "the person named thereon" which in this case is appellant. Appellant contends that the clause only applies to employees because the word "employee" is specifically used. However, the clause also references "service rendered to the Authority," clearly contemplating people in appellant's position as a volunteer board member. Presumably, disciplinary action is provided for employees only because TARTA would not be in a position to discipline someone who was not on their payroll.

**{¶ 12}** Appellant argued that the clause did not apply to her because it only mentions TARTA, not TARPS. This argument is without merit as TARPS is part of TARTA.

**{¶ 13}** Appellant also argues that there was no evidence that she used the pass on the date of her injury. We disagree. TARTA's exhibit O, admitted into evidence, was a copy of the TARP driver's operator manifest for May 21, 2009. It shows that he transported appellant free of charge. Her fare type is listed as "ASS." According to the sworn affidavit of Lisa Leu, TARTA's administrative manager, "ASS" is an abbreviation for "assessment," the term used to indicate that a board member or employee used their free pass.

**{¶ 14}** Finally, appellant argues that TARTA should not be protected from liability because the exculpatory clause was executed in an unconscionable manner. However,

6.

the record reflects that appellant received the free-pass, even though she refers to it as merely her identification card, and she was fully aware that she did not have to pay for TARTA rides. The language quoted above was clear that her use of the free-pass/identification card exempted TARTA from liability. Unfortunately, like all applicable waivers, the waiver here must apply to the contracting party despite any claim of ignorance. *See*, *e.g.*, *Lunsford v. Cleveland Union Terminals Co.*, 170 Ohio St. 349, 165 N.E.2d 3 (1960). Appellant's sole assignment of error is not well-taken.

{¶ 15} For the forgoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.         _____
                   JUDGE
Thomas J. Osowik, J.     

               _____
Stephen A. Yarbrough, P.J.        JUDGE
CONCUR.

               _____
                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.

7.